UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 2:18-CR-122-PPS |
| ) | |
| SANTINO PICAZZO, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

This matter is before me on Santino Picazzo's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), filed in response to the COVID-19 pandemic. [DE 36.]  Picazzo is a 36 year old male who claimed in his administrative motions that he suffers from high blood pressure, fatty liver disease, and obesity, and his medical records attached to his reply indicate he is obese and has newly onset Type 2 diabetes. He is currently incarcerated at FCI Morgantown in West Virginia, which the government has represented to the court had no current cases of COVID-19, but Picazzo asserts that there were at least 2 documented staff member cases and 4 inmate cases at the time of the government's submission. [DE 43 at 2.]  In accordance with my order dated August 12, 2020, the Federal Defender's Office filed a notice stating they would be unable to assist the defendant. [DE 37, 38.]  The government filed a response in opposition to Picazzo's motion for release. [DE 40.] After receiving an extension of time, Picazzo then filed a reply on September 22, 2020. [DE 43.]

Let's begin by looking at the procedural background of this case.  On October 18,

2018, Picazzo was charged in a two-count indictment with distributing cocaine, heroin, and methoxyacetyl fentanyl, all in violation of 21 U.S.C. § 841(a)(1). [DE 1.] Picazzo pleaded guilty on July 29, 2019, to Count 2, distributing a mixture or substance containing heroin and methoxyacetyl fentanyl, in exchange for the government dismissing Count I. [DE 25, 31.]

During the investigation phase of this case, law enforcement was notified that Picazzo was selling controlled substances, so they set up controlled buys. The first controlled buy took place on February 7, 2018, when Picazzo sold the confidential informant 27.5 net grams of cocaine for $1,150 and the second controlled purchase took place on February 12, 2018, when Picazzo sold 24.9 grams of a substance that later tested positive for heroin and methoxyacetyl fentanyl, for $1,625. [DE 40 at 2.]

On October 28, 2019, I sentenced Picazzo to 21 months imprisonment to be followed by 2 years of supervised release. [DE 33.] Picazzo's final offense level was 19 and he had a criminal history category of I. [PSR, DE 28, at ¶¶ 25, 33.] Picazzo is currently serving his sentence at FCI Morgantown with a projected release date of June 2021. [DE 40 at 6.]

In support of his motion, Picazzo argues the COVID-19 pandemic is an extraordinary and compelling reason to consider a reduction in his sentence, that prison conditions do not allow for preventing the transmission of the disease, incarcerated individuals are at special risk of infection given their living situations, the largest outbreaks are tied to prisons and "the only way to minimize Defendant's risk of

2

infection is to move him out of BOP custody." [DE 36 at 6.]  He also questions whether the proper safety measures are being followed at Morgantown and attaches statements from other inmates documenting times where either certain inmates or staff members were not wearing masks. [DE 43 at 1, 5-7.]  Although Picazzo did not set forth any health concerns in his original motion, he did attach his inmate request to the warden where Picazzo states he has high blood pressure, fatty liver disease, and is obese.  [DE 36 at 10.]  Additionally, he attached his medical records to the reply. [DE 43 at 8-114.] These indicate his past medical history is significant for post traumatic stress disorder but he was currently stable in January 2020, he denied hypertension, his weight in February 2020 was 253 pounds and BMI 43.4, and he suffered a stress fracture to his ankle.  [*Id.* at 13-14, 19, 26, 43, 68, 111.] In February 2020, the records indicate he has a new onset of Type 2 diabetes mellitus. [*Id.* at 111.]

      The instant request is for compassionate release under the First Step Act.  Picazzo bears the burden of showing he is entitled to compassionate release.  *See United States v. Greenhut*, No. 2:18-CR-00048-CAS-1, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31. 2020). Compassionate release is "an extraordinary and rare event."  *United States v. Mangarella*, 3:06-cr-151-FDW-DCK-3, 2020 WL 1291835, at *2-3 (W.D.N.C. Mar. 16, 2020).

      The First Step Act has a requirement that the petitioner exhaust all administrative remedies first.  Picazzo filed his motion for compassionate release with the warden in June of 2020, it was denied in July 2020, he sought reconsideration, and received a denial on July 27, 2020.  Therefore, Picazzo has met the administrative

3

exhaustion requirement.

The First Step Act provides that the Court may reduce the term of imprisonment after considering the factors set forth in section 3553(a), if it finds that "extraordinary and compelling reasons warrant such a reduction" and that such a reduction "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(I). In other words, the compassionate release statute directs me to make three considerations: (1) whether a reduction is consistent with the factors listed in section 3553(a); (2) whether extraordinary and compelling reasons warrant a sentence reduction; and (3) whether a reduction would be consistent with the Sentencing Commission's policy statements. These considerations weigh against release in Picazzo's case.

The section 3553(a) factors, which are well-known by this point, include the nature and circumstances of the offense and history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant; and the kinds of sentences and sentencing range for the applicable category of offense committed. 18 U.S.C. § 3553(a). Picazzo was convicted of distribution of heroin and a fentanyl analogue, which are both extremely dangerous and potent drugs that have contributed to a different kind of epidemic in this country - one of drug addiction hurting lives and damaging communities. I sentenced Picazzo to 21 months in prison, and that was a below-Guideline sentence. The serious and

dangerous nature of Picazzo's offense does not weigh in favor of his early release. While Picazzo states he has no disciplinary actions in prison, I don't have any documentation of his behavior in prison, and due to the serious nature of his drug dealing, it is possible that Picazzo could still pose a danger to the public. Although his release date of June 2021 is less than a year away, on the other hand, Picazzo still has a significant portion of his sentence left to serve. The Section 3553(a) factors of punishment, deterrence, and promotion or respect for the law do not warrant release in this case. *See, e.g., United States v. Marquis Medellin*, 2020 WL 4048139, 2:15-cr-72-PPS (N.D. Ind. July 20, 2020) (denying request for compassionate release based in part on the severity of the offense); *United States v. Morales*, No. 3:19-CR-00121 (KAD), 2020 WL 2097630, at *4 (D. Conn. May 1, 2020) (denying motion for compassionate release where underlying offense was dangerous, finding "[n]or does the sentence of 'time served' achieve the goals of sentencing or otherwise find the proper balance of the Section 3553 sentencing factors.").

In turning to whether there are "extraordinary and compelling reasons [that] warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" 18 U.S.C. § 3582(c)(1)(A), I note that the pertinent policy statement is set forth in the United States Sentencing Guidelines (USSG) § 1B1.13. This would allow me to reduce Picazzo's sentence if I determined extraordinary and compelling reasons warrant the reduction, Picazzo is not a danger to the safety of any person or the community, and the reduction is consistent

with the policy statement. USSG § 1B1.13. The Sentencing Commission also provided specific examples of what constitutes an extraordinary and compelling circumstance, which include, *inter alia*: the defendant is suffering from a terminal illness; the defendant is suffering from a serious physical or medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility; or other reasons as determined by the Director of the BOP. USSG § 1B1.13 cmt. n. 1.

Here, Picazzo's health issues by themselves do not constitute extraordinary or compelling reasons to reduce his sentence. As the court in *United States v. Ayon-Nunez*, No. 1:16-CR-00130-DAD, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020) reasoned in rejecting a claim for compassionate release from a defendant suffering from severe back injuries and epilepsy:

> To be faithful to the statutory language requiring 'extraordinary and compelling reasons,' it is not enough that Defendant suffers from . . . chronic conditions that [he] is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.

Picazzo's original motion does not specifically mention any health issues, as he instead seems to rely on the general risk of COVID-19 to those in prison. However, Picazzo did attach his administrative motions, and in there, he claims to have high blood pressure, fatty liver disease, and claims to be obese. The PSR, filed in October 2019, provides his height as 5'4", and his weight as 230 pounds and does state he has been diagnosed with a fatty liver. [PSR ¶¶ 61, 63.] As the government has recognized, within the United

6

States, 30% of the population has a "fatty liver," nearly half of the population has high blood pressure, and almost 40% are considered obese. [DE 40 at 11.] Picazzo did attach to his reply his medical records from prison. The medical records do document his obesity and a new onset of Type 2 diabetes. [DE 43 at 111.] But his maladies are common and treatable, and I have nothing before me that shows Picazzo's health conditions affect his ability to provide self-care in the institution and therefore would not, by themselves, justify release. *See, e.g., United States v. Carpenter*, No. 2:14-cr-309-GEB, 2019 WL 7631396, at *2 (E.D. Cal. Dec. 23, 2019) (denying compassionate release where the records "evince that [the prisoner's] medical conditions are not life-threatening and should not limit her self-care ability."); *United States v. Willis*, 382 F.Supp.3d 1185, 1188 (D. N.M. 2019) (quotation omitted) ("In exercising discretion under § 3553(a) and the First Step Act, most courts treat compassionate release due to medical conditions as . . . a rare event."); *United States v. Dusenbery*, No. 5:91-cr-291, 2019 WL 6111418, at *2 (N.D. Ohio Nov. 18, 2019) (denying compassionate release to defendant suffering from multiple conditions, including potential kidney failure, because they did not "impair his ability to provide self-care within the correctional facility.").

      The central question is really whether Picazzo's health, along with the enhanced risk of contracting COVID-19 at Morgantown FCI, justifies release. Even considering Picazzo's obesity, fatty liver, claimed high blood pressure, and newly onset Type 2 diabetes in the midst of the COVID-19 pandemic, it still does not meet the extraordinary

7

and compelling standard in this case.  According to the Centers for Disease Control and Prevention (CDC), obese people and people with Type 2 diabetes mellitus "are at an increased risk of severe illness from COVID-19 " and people with high blood pressure or fatty liver disease might be at an increased risk. Https://www.cdc/gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last viewed September 23, 2020).  Yet Picazzo is a relatively young man who seems to be in relatively good health overall, and suffers from common underlying conditions.

Thankfully, there is a very low rate of COVID-19 infection at Morgantown FCI. According to the government, at the time of its response, there were no current cases of COVID-19 and only one employee who had tested positive had recovered.  [DE 40 at 13.] But according to Picazzo, there were at least 2 documented staff member cases and 4 inmate cases at the time of the government's response. [DE 43 at 2.]  I recognize that there are inconsistencies with these numbers, and the numbers themselves may constantly change and may not even be accurate, but I can only work with the data that I have in front of me.  And right now, no matter whether I accept Picazzo's numbers or the government's numbers, there is an extremely low rate of COVID-19 at Morgantown. While Picazzo criticizes Morgantown's efforts to curb the virus, the positivity rate there is much lower than other institutions across the country, and this implicitly shows that Morgantown is doing a decent job curbing the spread of the virus.

While I am certainly sympathetic with Picazzo's situation and his concern about

potentially becoming infected with COVID-19 from someone else at the facility, I do not think this is an extraordinary and compelling reason to justify release. S*ee United States v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020) ("the mere presence of COVID-19 in a particular prison (or the BOP generally) cannot justify compassionate release - if it could, every inmate in that prison could obtain release."); *United States v. Collins*, No. 14-cr-30038, 2020 WL 2301217, at *2 (C.D. Ill. May 8, 2020) (denying motion for compassionate release, recognizing "the COVID-19 pandemic does not warrant the release of every federal prisoner with health conditions that makes him more susceptible to the disease.").

Issues surrounding the COVID-19 pandemic are changing rapidly and new developments are occurring almost every day. At this point, based upon all the facts before me, I do not think that Picazzo's sentence should be reduced and he should be released on home confinement. If factual developments warrant a reconsideration, Picazzo is free to exhaust his administrative remedies again, and file a new motion under § 3582(c)(1)(A).

## Conclusion

Despite the severity of the COVID-19 pandemic, Picazzo's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [DE 36] is DENIED. Picazzo has not shown the factors under section 3553(a) warrant release or that extraordinary and compelling reasons warrant such a reduction under § 3582(c)(1)(A). SO ORDERED.

ENTERED: September 28, 2020.

 /s/   Philip P. Simon  
PHILIP P. SIMON, JUDGE  
UNITED STATES DISTRICT COURT
